No. 23-1969

# In The United States Court of Appeals for the Federal Circuit

XEROX CORPORATION,

*Appellant,*

v.

META PLATFORMS, INC., f/k/a FACEBOOK, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-01461.

**CORRECTED REPLY BRIEF FOR XEROX CORPORATION**


Kevin L. Burgess
*Principal Attorney*
MCKOOL SMITH, P.C.
104 East Houston Street, Ste. 300
Marshall, TX 75670
(903) 923-9000

David Sochia
Alexandra F. Easley
MCKOOL SMITH, P.C.
300 Crescent Court, Ste. 1500
Dallas, TX 75201
(214) 978-4000

Joel L. Thollander
James E. Quigley
Kyle N. Ryman
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
(512) 692-8700

*Attorneys for Appellant Xerox Corporation*


April 16, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1969 |
| **Short Case Caption** | Xerox Corp. v. Meta Platforms, Inc. |
| **Filing Party/Entity** | Xerox Corporation |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Signature: /s/ *Joel L. Thollander*

Name: Joel L. Thollander

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Xerox Corporation | | Xerox Holdings Corporation (wholly owns Xerox Corporation) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ ADDITIONAL PAGES ATTACHED

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | |
|---|---|
| **McKool Smith, P.C.** | George T. Fishback, Jr., Carra Rentie, Ashley Moore (no longer with the firm) |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... v

INTRODUCTION ..... 1

ARGUMENT IN REPLY ..... 4

I. The Board Erred In Claim Construction. ..... 4

  A. Meta's response confirms the Board improperly read the recited "and assertions" out of the claims. ..... 4

  B. Meta's response confirms the Board also improperly read the recited "of context graph change" out of the claims. ..... 10

II. The Board Erred In Determining That Meta Met Its Burden to Prove That Xerox's Claims Are Obvious. ..... 14

  A. Meta failed to identify any prior art combination that disclosed all of the recited claim limitations. ..... 14

    1. *Facts and assertions.* ..... 14

    2. *Registration for and notification of context graph change.* ..... 16

  B. Meta's response confirms the Board further erred in finding a motivation to combine. ..... 17

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
935 F.3d 1319 (Fed. Cir. 2019) ....................17, 19

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................16

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................19

*Google LLC v. Ecofactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................5, 6, 11

*In re NuVasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016) ....................18, 19

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................20

*Intel Corp. v. Qualcomm, Inc.*,
21 F. 4th 801 (Fed. Cir. 2021) ....................12

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................21

*Paice LLC v. Ford Motor Company*,
881 F.3d 894 (Fed. Cir. 2018) ....................19

*PersonalWeb Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ....................19

*Quantum v. Intel*,
6 F.4th 1256 (Fed. Cir. 2021) ....................21

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*,
856 F.3d 1019 (Fed. Cir. 2017) ....................20

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ....................20

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns. AB*,
820 F.3d 419 (Fed. Cir. 2016) ....................9

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................18

**STATUTES**

35 U.S.C. § 112 ....................9

35 U.S.C. § 319 ....................15

## INTRODUCTION

Meta's response[1] confirms that the Court should reverse.

On the first claim-construction issue—whether "facts and assertions" recite two things (Xerox's position) or one thing (Meta's position)—Meta attempts to evade this Court's review. Meta first argues that the Board's resolution of this claim-scope dispute was not claim construction subject to de novo review. RedBr.15. The Board, however, recognized that it was engaging in claim construction. Meta next argues that the issue is "not reviewable" because the Board was just applying constructions to which the parties had agreed. RedBr.15. The Board, however, recognized that it was resolving the claim-scope dispute against Xerox. Further, the constructions to which the parties, their expert, and the Board agreed—to the extent they were agreed—supported *Xerox's* position. BlueBr.28-33. The Board noted agreement that, for purposes of the '439 patent, "facts" and "assertions" are two different things, with two different meanings: facts have an indication of truth; assertions have no indication of truth. Appx14. And the Board further "agree[d] that the two terms have different meanings … based on the plain meaning of each term." Appx15. Its subsequent conclusion that one thing (facts) would always meet the two limitations (facts and assertions), was a reviewable determination of claim scope.

[1] The IPR petition was filed by "Facebook, Inc." (Facebook), but Facebook has changed its name to "Meta Platforms, Inc." (Meta). The response brief refers to the petitioner and appellee as "Meta" (RedBr.1 n.1); this reply brief will do the same.

On the merits, Meta argues that the Board did not render the recited "and assertions" superfluous because "other scenarios are possible," including "a context graph that satisfies the claims by including a combination of 'facts' as well as a number of 'assertions' that lack a further indication of truth and thus do not also qualify as facts." RedBr.25. Meta believes this alternative "scenario" shows that "Xerox's superfluity argument fails." RedBr.25. But it shows the opposite: it reflects the *recited* scenario in which—in contrast to the Board's reading of the claims—*both* the recited "facts" *and* "assertions" are present, and thus both recited terms are given meaning, and neither is treated as surplusage. BlueBr.29-31.

The Board could have, and should have, read the claims to align with Meta's alternative scenario. That would also have been consistent with the governing rule, acknowledged by the Board, "that when two different terms appear in a claim, they presumably refer to different things." Appx15. But the Board did not do that.

On the second claim-construction issue—whether notification "of context graph change" requires notification "of context graph change"—Meta offers no response at all to Xerox's showing that the Board's resolution of this claim-scope dispute was an act of claim construction. BlueBr.34-35. And Meta offers no substantive response to Xerox's showing that the Board's construction effectively reads the recited "of context graph change" out of the claims. BlueBr.35-36. Meta simply suggests, in a single sentence, that this demonstration of superfluity "misses

the point." RedBr.40. Respectfully, the point is that the Board's construction violates the rule that claim language must not be rendered meaningless surplusage. Meta's response leaves Xerox's demonstration on that point entirely unrebutted.

Regarding the missing-element issues (BlueBr.38, 43), Meta does not dispute that, if either of the Board's claim constructions fall, so must its determination of invalidity in this IPR (RedBr.27-30, 37-40).

On motivation to combine, Meta relegates to a footnote its half-hearted dissent from Xerox's showing that the Board relied on a new theory ("fill in the missing details") that was dispositively different from the theory ("timely recommendation") Meta presented in its petition. BlueBr.47-49; RedBr.44 n.6. The footnote is insufficient to preserve Meta's argument, and it does nothing to undermine Xerox's demonstration that the Board's reliance on the "fill in the missing details" theory violated the governing rules. As to the conclusory nature of the Board's motivation-to-combine finding (BlueBr.49-53), Meta suggests that "the Board's rejection of Xerox's argument" was all that was necessary to support the determination, as it "removed Xerox's barrier against the combination" (RedBr.45). But this thinly disguised gambit to shift the burden of persuasion onto Xerox fails; the Board cannot generate substantial evidence simply by rejecting a patent owner's arguments.

This Court should reverse.

## ARGUMENT IN REPLY

### I. The Board Erred In Claim Construction.

#### A. Meta's response confirms the Board improperly read the recited "and assertions" out of the claims.

Xerox's brief recounted how, during the IPR, a dispute arose between the parties regarding the "facts and assertions" recited in the claims of the '439 patent: are those two things (Xerox's position)? Or one (Meta's position)? BlueBr.28-33; Appx13-14. In the "claim construction" section of its final written decision, the Board resolved this claim-scope quarrel in Meta's favor. Appx10, Appx13-16. The Board noted that the parties and their experts effectively agreed that "facts" and "assertions" were different things: a fact includes "an indication of truth," while an assertion does not. Appx14. The Board further acknowledged that "when two different terms appear in a claim, they presumably refer to different things," and "agree[d] that the two terms have different meanings in claim 1 based on the plain meaning of each term." Appx15. But the Board then pivoted and determined that, as a matter of claim scope, any "disclosure of a collection of facts would meet the term 'facts and assertions'" as recited in claim 1. Appx16. The Board further posited that its construction of "facts and assertions" would "not render the two terms superfluous" in violation of the governing case law it had cited. Appx16.

Xerox demonstrated that this holding was logically unsound and in conflict with this Court's controlling claim-construction precedents. BlueBr.28-32. Meta responds by side-stepping the Board's actual determination. RedBr.3, 15, 21-28.

Meta first argues that the Board resolved no dispute on claim scope that could be subject to de novo review, but instead addressed only a factual issue that must be reviewed for substantial evidence. RedBr.3, 15, 21. That is incorrect. The Board itself understood this dispute as presenting an issue of claim construction (Appx10-14); placed its discussion of the dispute in the "claim construction" section of its final written decision (Appx10); discussed relevant claim-construction case law in addressing the dispute (Appx15); and based its determination on its reading of the "ordinary and customary meaning" of the claim terms (Appx15-16). This is claim construction. BlueBr.28-33; *see also Google LLC v. Ecofactor, Inc.*, 92 F.4th 1049, 1055-56 (Fed. Cir. 2024) (explaining that the Board has engaged in claim construction where, as here, it determines "the scope (e.g., boundaries) and meaning" of a recited limitation based on its reading of "the clear implication of the claim language"). Meta appears to concede as much when it later argues that the Board's reading did not offend "principles of claim construction." RedBr.24.

Meta then suggests that the Board's holding is "not [even] reviewable on appeal" because the Board simply applied "definitions to which Xerox agreed during the IPR proceedings." RedBr.15. That is also incorrect, and also incompatible with

the Board's own understanding and resolution of the dispute. The Board noted that the parties and their experts appeared to agree that "facts" and "assertions" were *different* terms referring to *different* things, and the Board likewise agreed that "the two terms have *different* meanings … based on the plain meaning of each term." Appx15 (emphasis added). Nevertheless, immediately after noting the general agreement that "facts and assertions" are *two* things, not *one*, for purposes of the '439 patent claims, the Board concluded—in setting the boundaries of the claims—that the presence of *one* of those things (facts) would always satisfy the claimed recitation of *both* of those things (facts and assertions). Appx16 ("a disclosure of a collection of facts would meet the term 'facts and assertions'"). The Board recognized that, in so concluding, it was rejecting Xerox's position on claim scope. Appx15-16. Again, this was an act of claim construction that is not only reviewable on appeal; it is reviewed de novo. *Ecofactor*, 92 F.4th at 1055-56; BlueBr.28-33.

Meta's arguments on the merits fare no better than its attempts to avoid this Court's review. RedBr.24-27. De novo review on the merits, to borrow Meta's language, permits only one "logical and inescapable result" (RedBr.23): disclosure of *both* facts *and* assertions—as two different things with two "different meanings" (Appx15)—is necessary to meet the recited term "facts and assertions." BlueBr.28-33. That is, borrowing from what Meta calls "the agreed definitions" (RedBr.23),

the recited "facts and assertions" requires disclosure of *both* facts (with an indication of truth) *and* assertions (with no indication of truth). BlueBr.28-33.

In response to Xerox's showing that the Board's construction improperly renders the words "and assertions" superfluous, and effectively reads them out of the claims (BlueBr.31-32), Meta posits that "other scenarios are possible," including "a context graph that satisfies the claims by including a combination of 'facts' as well as a number of 'assertions' that lack a further indication of truth and thus do not also qualify as facts." RedBr.25. Meta believes this alternative "scenario" shows that "Xerox's superfluity argument fails." RedBr.25. But it shows the opposite: it reflects the *recited* scenario in which—in contrast to the Board's reading of the claims—*both* the recited "facts" *and* "assertions" are present, and thus both recited terms are given meaning, and neither is treated as surplusage. BlueBr.29-31.

The Board could have, and should have, read the claims to align with that scenario. It could have required disclosure of a collection of "facts" with an indication of truth, as well as a number of "assertions" that, in Meta's words, "lack a further indication of truth and thus do not also qualify as facts." RedBr.25. That would have been consistent with the general agreement that facts and assertions are two things, and that facts include an indication of truth while assertions do not. It would also have been consistent with the governing rule, acknowledged by the

Board, "that when two different terms appear in a claim, they presumably refer to different things." Appx15; BlueBr.29-30. But the Board did not do that.

Instead, the Board read "assertions" as collapsing into "facts" because "any subset of facts" might also—in the absence of the controlling presumption—be "regarded [as] assertions." Appx16. In so doing, the Board rendered "and assertions" meaningless; it read those words straight out of the claim term. BlueBr.31-32. That was legal error, and Meta's "other scenarios" argument proves it.

Meta further suggests that rendering "and assertions" meaningless surplusage was "simply [the] result of the definitions of 'facts' and 'assertions'" the Board discussed in its decision. RedBr.24. But again, Meta's "other scenarios" argument demonstrates that the agreement that facts and assertions are two things, with two different meanings, could easily have been read to require disclosure of two things, with two different meanings: facts (with an indication of truth) and assertions (with no indication of truth). RedBr.25 Meta also suggests that the "preference for giving meaning to all terms" is "not an inflexible rule that supersedes all other principles of claim construction." RedBr.24 (citing *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns. AB*, 820 F.3d 419, 429 (Fed. Cir. 2016)). But Meta does not identify any superseding principle of claim construction that could justify rendering a claim term meaningless surplusage in this case. RedBr.24-25. And the result in *SimpleAir*—the Court's affirmation of the rule that "[d]ifferent claim terms are presumed to have

different meanings," and its conclusion "that 'data feed' does not carry the same meaning as 'data channel,'" 820 F.3d at 431—supports Xerox's position here.

After pointing out that the parties, their experts, and the Board all had no trouble discerning the distinction between fact and assertions (RedBr.21-25), and after stressing the "agree[ment] that the two terms have different meanings in claim 1 based on the plain meaning of each term" (Appx15), Meta complains that the '439 patent "provides no guidance for distinguishing a 'fact' from an 'assertion'" (RedBr.27). But Meta's own arguments conclusively demonstrate that the '439 patent provides all the guidance that is necessary on this issue: Meta agrees that the experts, the parties, and the Board were all perfectly capable of distinguishing, for purposes of the '439 patent claims, between a fact (with an indication of truth) and an assertion (with no indication of truth). *See* RedBr.21-25; Appx14, Appx1562.[2]

Reversal is necessary on Xerox's first claim-construction issue.

---

[2] Meta later suggests that Xerox's argument that "facts and assertions" means facts *and* assertions, "if adopted, would boomerang against Xerox by establishing a lack of adequate written description support for the claimed 'facts and assertions' as recited in claim 1." RedBr.31. This suggestion has no bearing whatsoever on the issues before the Board or the Court. It is also unsupported and wrong. Again, Meta's own arguments conclusively demonstrate that the '439 patent's written description is sufficiently "full, clear, concise, and exact" to enable persons of ordinary skill "to make and use" the invention, including a context graph storing relevant facts and assertions. *See* 35 U.S.C. § 112(a); RedBr.21-25; Appx14, Appx1562.

**B. Meta's response confirms the Board also improperly read the recited "of context graph change" out of the claims.**

Meta's response also confirms that reversal is necessary on Xerox's second claim-construction issue. As Xerox recounted, another dispute arose between the parties regarding the scope of the recited "notification of context graph change." BlueBr.33-35. Xerox argued that the recited notification had to be "of context graph change," while Meta argued that "any notification triggered by a context graph change would meet [the] limitation." BlueBr.34; Appx32. The Board sided with Meta and concluded that, "by the plain language, any notification that alerts the recommender that the context graph has changed in a manner matching the registration is sufficient to meet" the limitation, "whatever the content of that notification." BlueBr.34-35; Appx33. Xerox demonstrated that: (1) this was an act of claim construction subject to de novo review; and (2) the Board's construction erroneously rendered the words "of context graph change" superfluous, and effectively read them straight out of the claims. BlueBr.33-36.

Meta does not respond to (1) the first point at all. Meta simply argues that substantial evidence supports the Board's determination. RedBr.33, 37-40. Xerox's showing that this was claim construction subject to de novo review thus stands unrebutted. This Court's recent *Ecofactor* decision further confirms that the Board engaged in claim construction where, as here, it determined "the scope (e.g., boundaries) and meaning" of the recited limitation based on its reading of "the clear

implication of the claim language." 92 F.4th at 1051-52. This is true regardless of "[t]he point in the proceeding at which the analysis occur[red]," and no matter whether the Board "recognize[d] that it [was] construing a claim." *Id.* at 1056.

The reason that Meta does not respond to (1) the showing that this was claim construction is likely because Meta has no good response to (2) the demonstration that the Board's construction reads the words "of context graph change" out of the claims. Indeed, the most that Meta can muster is a sideways comment that "this argument misses the point—there is nothing in the claim reciting anything about the ***content*** of the notification." RedBr.40. But it is Meta that misses the point.

The point is that the claims require notification "of context graph change." And as Xerox demonstrated, and Meta does not dispute, the Board's construction of this term renders "of context graph change" nothing but surplusage. BlueBr.35; RedBr.40. Meta just repeatedly reiterates its position, with no analysis or intrinsic record support, that any notification "triggered by a context graph change" should be considered a notification "of context graph change." Appx32; *see also* RedBr.38 (arguing that any notification that "occurred because of the context graph change" meets the limitation); RedBr.39 (arguing that any notification that "was the direct result of the change" meets the limitation). But this is merely attorney argument which cannot overcome the "cardinal" claim-construction directive to avoid

rendering claim language "void, meaningless, or surplusage." BlueBr.36; *Intel Corp. v. Qualcomm, Inc.*, 21 F. 4th 801, 809-10 (Fed. Cir. 2021).

Under Meta's argument, and the Board's construction, "any notification that alerts the recommender that the context graph has changed in a manner matching the registration" meets the limitation. Appx33. But precisely the same analysis holds if the words "of context graph change" are struck from the claim language:

> in response to determining that there exists a registration for notification of changes that matches the modification to the context graph, sending a notification […] to a recommender.

Appx79 (claim 1); BlueBr.35. The words "of context graph change" must be given some meaning. Under Meta's "triggered by" argument, they have none. Meta's response—leaving this showing unrebutted—conclusively proves the point.

With no evidence to support its argument, Meta turns to a newly imagined hypothetical. "For example," Meta muses, "email programs commonly emit an audible 'ding' or other sound to indicate that a new email message has been received. That ding provides **'a notification of'** a new message being added to the user's inbox, even though the ding ***itself*** conveys no information about what it represents." RedBr.17, 38. Whatever the merits of that made-up hypothetical, it has nothing to do with either the Board's claim construction or the Board's application of that construction in this IPR to Falchuk's "registration to trigger a reminder of a user's goal." Appx32. Falchuk's reminder of a goal might be a recommendation, as Meta

notes, "that the user pick up a prescription." RedBr.38. Whether or not a "ding" emitted "to indicate that a new message has been received" may be considered notification of the receipt of a new message, resolution of that hypothetical does nothing to show that a notice "recommending that the user pick up a prescription" is notification "of context graph change." Plain and ordinary meaning cuts against Meta's position. And that is confirmed by the undisputed fact that Meta's position equates to erasing the relevant language from the claims.

With no evidence to support is argument, Meta also turns to mischaracterizing Xerox's position. "Xerox argues," asserts Meta, "that the claimed notification must include specific content identifying or describing the context graph change that occurred." RedBr.17, 37. Xerox thus reads the claims, according to Meta, as if they recited a "notification ***describing*** context graph change," or a "notification ***detailing*** context graph change." RedBr.40. None of that is right. Xerox's point is straightforward: notification "of context graph change" means notification "of context graph change." It does *not* mean—because it *cannot* mean, without violating a cardinal rule of claim construction (BlueBr.35-36)—any notification bearing some causal nexus with a context graph change. RedBr.38-39. And the requirement for notification "of context graph change" makes sense, considering the invention "is related to a method and system for collecting mobile device contextual information and facilitating efficient adaptation of a generic contextual intelligence system for

customized applications." Appx75 (1:9-12). Notice of the context graph change itself—rather than some related recommendation regarding a particular goal, such as picking up a prescription—enables efficient adaptation of the more generalized contextual intelligence system to a variety of customized applications.

Reversal is also necessary on Xerox's second claim-construction issue.

## II. The Board Erred In Determining That Meta Met Its Burden to Prove That Xerox's Claims Are Obvious.

### A. Meta failed to identify any prior art combination that disclosed all of the recited claim limitations.

#### 1. *Facts and assertions.*

Meta does not dispute that the Board found the "facts and assertions" limitation met by disclosure of "facts." Appx27; RedBr.28 (agreeing that the Board found that "by disclosing a context graph comprising a collection of facts, Cheng discloses 'facts and assertions' as recited in claim 1"). Meta likewise does not dispute that it only identified, at best, a collection of "facts" as purportedly meeting the "facts and assertions" limitation. RedBr.30 (arguing that Meta had no obligation "to provide a separate and distinct labeling of 'facts' and 'assertions' when applying the Cheng prior art reference to the claim"). Meta justifies its failure to identify facts *and* assertions in the prior art—as two things, not one—solely on the basis of the Board's claim construction: "[b]ecause the Board correctly determined that the claim language imposes no such requirement," Meta argues, "Meta was obviously not required to account for this non-existent limitation" in meeting its burden of proof.

RedBr.30. That argument not only further confirms that the Board engaged in claim construction; it also makes clear that, if the construction falls, so must the Board's determination of invalidity. BlueBr.38.

Meta also argues that Xerox's separate "particularity" argument is "frivolous" because Xerox cannot raise "a challenge to the Patent Office's unreviewable decision to institute IPR." RedBr.29 (citing *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1386 (Fed. Cir. 2020)). That is a non sequitur. Xerox has not raised a challenge to the Board's decision to institute the IPR; Xerox has raised a challenge to the Board's final determination that Meta met its burden of proof in this IPR. BlueBr.2, 37-43. That determination is most certainly reviewable. *See* 35 U.S.C. § 319. And to meet its burden, Meta must have presented—in its petition—a theory of obviousness that, among other things, identified each recited limitation as disclosed in the prior art. *See* BlueBr.39-40 (collecting cases). At the hearing before the Board, Meta conceded that "the petition does not go out and say ABC are the facts, DE and F are the assertions." Appx721. Xerox further demonstrated in its brief that, in fact, *neither* facts *nor* assertions are identified or mapped in the petition: A through F are missing in their entirety. BlueBr.41; Appx250-252.

In response, aside from its second meritless attempt to evade this Court's review, Meta simply argues that the need to map "facts" and "assertions onto the prior art "was not foreseeable given the plain meaning of 'facts' and 'assertions.'"

RedBr.31-32. That argument founders on Meta's recognition that the parties, their experts, and the Board all understood that facts are one thing (with an indication of truth) and assertions are another (with no indication of truth). RedBr.21-25.

Finally, Meta argues that it offered alternative arguments for obviousness that the Board "did not need to reach … given its rejection of Xerox's interpretation of 'facts and assertions.'" RedBr.33. And Meta argues that, "to the extent this Court were to adopt Xerox's view, a remand would be required to consider these alternative arguments in the first instance." RedB.33. Xerox disagrees that any remand would be necessary here. Meta concedes that it did not identify facts *and* assertions in its petition (RedBr.30; Appx721)—because, says Meta, it was "not required to account for this non-existent limitation." RedBr.30. Should the Court find the recited limitation existent, then there is no petition-presented theory that could support a determination that Meta met its burden to prove obviousness in this IPR. BlueBr.39-40. And where the record will only permit a determination that Meta failed to meet its burden of proof, reversal is the right result. *See* BlueBr.42; *Corning v. Fast Felt Corp.*, 873 F.3d 896, 903 (Fed. Cir. 2017).

### 2. *Registration for and notification of context graph change.*

Meta does not dispute that it mapped the recited "registration for notification of changes" and "notification of context graph change" elements onto Falchuk such that the "registration" element "correspond[ed] in Falchuk to a goal explicitly

entered by the user or inferred by the system," and the "notification" element corresponded to reminders sent when the Falchuk system determined that an "event advances a given goal." BlueBr.43; RedBr.37-40; Appx31, Appx260, Appx262. Neither does Meta dispute that the Board's determination that this mapping was sufficient turned on the Board's acceptance of Meta's "triggered by" argument. *Supra* pp.10-14; *see also* BlueBr.43-45; RedBr.37-40; Appx33. For the reasons discussed above and in Xerox's opening brief (*supra* pp.10-11; BlueBr.33-36), that was an act of claim construction, and that construction was in error. Therefore, as with the "facts and assertions" term, the Board's determination on these recited elements must necessarily fall with its misconstruction of the "notification of context graph" term. Nothing in Meta's response suggests otherwise. RedBr.37-40.

### B. Meta's response confirms the Board further erred in finding a motivation to combine.

Xerox demonstrated two fatal flaws with the Board's motivation-to-combine finding: (1) the Board adopted a ground of unpatentability (a "fill in the missing details" theory) not advanced in the petition (a "timely recommendation" theory) as the purported motivation to combine (BlueBr.47-49); and (2) the Board's new ground of unpatentability was conclusory, generic, and unsupported (BlueBr.49-53).

In response, Meta virtually ignores Xerox's demonstration that (1) the Board crafted a new motivation-to-combine theory in violation of *Arthrex* and *NuVasive*. BlueBr.47-49; *Arthrex, Inc. v. Smith & Nephew, Inc.*, 935 F.3d 1319, 1326 (Fed. Cir.

2019); *In re NuVasive, Inc.*, 841 F.3d 966, 971-72 (Fed. Cir. 2016). In a footnote, and without addressing the case law, Meta suggests that "the 'fill in the missing details' theory" was not "first articulated by the Board" because Meta commented, in its petition (at Appx258), that "Cheng does not provide further detail regarding the interaction between the recommender and the personal interest graph." RedBr.44 n.6. This amounts to an effective concession on Xerox's first motivation-to-combine argument, which should be dispositive. For one thing, "arguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320, (Fed. Cir. 2006). For another, as Xerox demonstrated, the petition comment at Appx258 does not help Meta: it has nothing to do with the motivation-to-combine theory Meta presented in the petition. BlueBr.47-48; *Compare* Appx258 *with* Appx264-267, Appx908. Meta does not respond to this showing, leaving it unrebutted. Meta also does not dispute that the "timely recommendation" theory presented in the petition (Appx264-267)—*not* adopted by the Board—is different from the "fill in the missing details" theory the Board relied upon (Appx35). And new theories cannot be presented in reply, either. RedBr.44 n.6; BlueBr.47-48.

Regarding (2) the conclusory, generic, and unsupported nature of the motivation-to-combine finding, Meta argues that the Board's determination is rescued by *Paice* because the Board's finding was "commensurate with [Xerox's] arguments." RedBr.41-43 (citing *Paice LLC v. Ford Motor Company*, 881 F.3d 894,

905 (Fed. Cir. 2018)). But *Paice* cannot save the Board's motivation-to-combine determination. *Paice* did not address motivation to combine, and it certainly did not approve Board reliance on a motivation-to-combine theory *not* presented in the petition. *See Paice*, 881 F.3d at 905. That is foreclosed by *Arthrex* and *NuVasive*. BlueBr.49; *Arthrex*, 935 F.3d at 1326; *NuVasive*, 841 F.3d at 971-72. *Paice* also says nothing to suggest that a "could be combined" analysis—which is all the Board provided here (Appx34-35; BlueBr.50)—is sufficient to support an obviousness determination. That is foreclosed by *PersonalWeb* and its line of authority. *See* BlueBr.50 (collecting cases); *PersonalWeb Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) ("*could be* combined … is not enough"). Nor does *Paice* support Meta's suggestion that "the Board's rejection of Xerox's argument" was all that was necessary to support the determination, as it "removed Xerox's barrier against the combination." RedBr.45. That is just a thinly disguised gambit to shift the burden of persuasion onto Xerox—which is foreclosed by *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (holding that this burden must remain on the petitioner throughout the IPR proceeding).

To top it off, Meta is wrong about the Board's finding: it was not "commensurate with [Xerox's] arguments." RedBr.41. Meta posits that the "key argument Xerox provided against the Cheng-Falchuk combination, as noted by the Board, was that 'there is nothing in Cheng to suggest its recommendations are

untimely such that it needs to be combined with Falchuk.'" RedBr.42 (citing Appx33). That argument, as noted by the Board, was commensurate with the "timely recommendation" theory that Meta presented in its petition. BlueBr.47-49; Appx33. Both Meta and Xerox focused their arguments on the motivation-to-combine theory that had actually been presented in the petition. The Board's "fill in the missing details" theory was not commensurate with either party's principal argument. And the Board did not reject Xerox's argument on the "timely recommendation" theory—instead, the Board pivoted to its new theory after recognizing that Meta had been forced to take conflicting positions on whether or not "Cheng already recognizes the importance of timeliness." Appx34, Appx641-642. Xerox pointed this out in its brief; Meta offers no response. BlueBr.48; RedBr.41-45.

Meta suggests that this Court has held, in certain cases, that the "motivation to combine references can be inferred from the fact that they address the same problem." RedBr.43 (citing cases). But the Board did not cite to those cases, or offer such a rationale as supporting its determination. Appx33-35. The determination thus cannot be affirmed on that ground. BlueBr.26-27; *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1024 (Fed. Cir. 2017). Meta also notes that the Board "summarized" the parties' positions and arguments in its final written decision. RedBr.44. That also fails to provide substantial evidence that might support affirmation. *In re NuVasive, Inc.*,

842 F.3d 1376, 1383 (Fed. Cir. 2016) ("it is not adequate to summarize and reject arguments without explaining why the [Board] accepts the prevailing argument").

Xerox demonstrated that the Board's conclusory "fill in the missing details" theory was further undermined by the argument of Meta's counsel that, with respect to the recommendation and notification features at issue, Cheng discloses "the exact opposite and reverse of what Falchuk" discloses. Appx752; BlueBr.52-53. Meta initially suggests that "Xerox never raised this argument before the Board, and as such, this argument should be rejected." RedBr.45. But Meta's concession came at the hearing before the Board—after briefing was complete (Appx752)—and Xerox raises it as relevant to the new motivation-to-combine theory adopted in the Board's final written decision. There is no forfeiture in these circumstances. *See Quantum v. Intel*, 6 F.4th 1256, 1263 (Fed. Cir. 2021). And this Court's substantial-evidence review requires examination of the "record as a whole, taking into account evidence that both justifies and detracts from [the Board's] decision." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016).

Meta then attempts to explain away the concession by suggesting that its argument at the hearing was not based on "chang[ing] the way that Cheng worked," but instead "on adding to Cheng a beneficial and fully-described feature from Falchuk, *i.e.*, an immediate notification in response to a context graph change, that Cheng alone does not disclose." RedBr.47. Taking this explanation at face value,

Xerox's point still stands unrebutted: the argument that Cheng needed the addition of "a beneficial and fully-described feature from Falchuk" (RedBr.47) is *not consistent* with the Board's presumptive finding that Cheng and Falchuk worked the same way, and that a person of skill would only look from Cheng to Falchuk to "fill in the missing details" (Appx34-35). BlueBr.45-53.

The motivation-to-combine finding is not supported by substantial evidence.

## CONCLUSION

For these reasons, the final written decision should be reversed. Or, in the alternative, it should be vacated and remanded for further proceedings.

Respectfully submitted,

*<u>/s/ Joel L. Thollander</u>*

Joel L. Thollander
James E. Quigley
Kyle N. Ryman
MCKOOL SMITH, P.C.
303 Colorado Street, Ste. 2100
Austin, TX 78701
(512) 692-8700

David Sochia
Alexandra F. Easley
MCKOOL SMITH, P.C.
300 Crescent Court, Ste. 1500
Dallas, TX 75201
(214) 978-4000

Kevin L. Burgess
MCKOOL SMITH, P.C.
104 East Houston Street, Ste. 300
Marshall, TX 75670
(903) 923-9000

*Attorneys for Appellant*
*Xerox Corporation*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Reply Brief for Xerox Corporation,

1. Complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) and FED. CIR. R. 32(b)(1). This brief contains 5,177 words, excluding the parts of the brief exempted by FED. R. APP. P. 5(c), 21(d), 27(d)(2), 32(f), and FED. CIR. R. 32(b). Microsoft Word was used to calculate the word count.

2. Complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman type style.

Dated: April 16, 2024

*/s/ Joel L. Thollander*
Joel L. Thollander